## LESLIE, Plaintiff-Appellee v. McCandless et, Defendants-Appellants.

Ohio Appeals, Second District, Champaign County.

No. 110.   Decided January 26, 1944.

Vance Brand, Urbana, for plaintiff-appellee.
George Raup, Springfield, for defendants-appellants.

**OPINION**

BY THE COURT:

This matter is before this Court on appeal on questions of law from a judgment of the Court of Common Pleas of Champaign County.

The amended petition asserts that plaintiff is a real estate broker and that on the 8th of October, 1941, the defendants employed him to find a purchaser for real estate, consisting of about 700 acres situated in Champaign County, which real estate was owned by the defendant, Sarah Shuey McCandless, at a price of $75,000.00, and agreed to pay plaintiff a commission of 3 per cent on said price, which employment was accepted by plaintiff on the 8th of October, 1941. The plaintiff avers that on the 11th day of October, 1941, the defendants amended their employment instructions to plaintiff and included certain personal property which was, according to the petition, to be included in the sale for the price of $75,000.00.

It is alleged that the defendants reaffirmed their agreement to pay plaintiff a commission of 3 per cent on the $75,000.00 sale price; that on the 16th of October he found a purchaser, able, ready and willing to make the purchase under the defendants' terms, of which he notified the defendants. It is alleged that the defendants thereafter notified the plaintiff that they were unwilling to consummate the transaction and complete the sale by executing and delivering the deed. Plaintiff asks judgment in the sum of $2250.00.

The defendants for answer deny each and every material allegation.

A jury was waived and the action tried to the Court.

The Court on Nov. 18, 1942, found in favor of the plaintiff and assessed the recovery in the sum of $2250.00 with interest. On Nov. 20, 1942, a motion for a new trial on the usual grounds was made and overruled on March 28, 1943. Upon motion of the defendant made after the verdict was rendered, but before judgment was entered, the Court stated in writing his conclusions of fact separately from his conclusions of law.

The conclusion of facts so recited by the court was filed in the Court of Common Pleas on October 15, 1943, and consists of ten separate paragraphs which may be summarized, that the plaintiff was a licensed real estate broker; that the defendant, Sarah Shuey McCandless was the owner of 700 acres in Champaign County, and the owner of an undivided one-half interest in the live stock, grain and growing crops situated on the farm; that J. Bard McCandless was the duly authorized

agent of his wife, Sarah; that Leslie, in writing, on October 8th was employed by the defendants to sell said real estate, and that under the terms of the employment by the defendants they agreed to pay him a commission of 3 per cent of the purchase price of the farm; that plaintiff accepted the employment verbally and worked diligently throughout the period of employment, communicating with the defendants; that the terms of sale were amended on October 14, 1941, by a telegraphic communication to plaintiff, authorizing the inclusion of the defendants' share in the livestock, grain and crops situated on said farm in the stated price of $75,000.00 and the time limit was extended for the consummation of the sale to October 16th.

The Court further found that within the time prescribed by the defendants the plaintiff procured a buyer, one William L. Stadler, who was ready, willing and able to make the purchase under the defendants' terms, and that notice thereof was transmitted to the defendants by telegraphic communication, including a statement of the fact that Stadler had deposited a certified check in the sum of $5000.00. The Court finds that on October 17, 1941, the defendants notified plaintiff of their refusal to consummate the transaction. The Court also finds that in September, 1941, the plaintiff submitted a written offer from Stadler that Stadler was to pay the broker a commission of 2 per cent and the defendants were to pay a commission of 3 per cent; that the broker disclosed to both buyer and seller the arrangement about the contribution of each to the commission.

## CONCLUSION OF LAW

The Court found that an order of employment was made by the defendants and accepted by the plaintiff, who within the limit prescribed by the defendants procured a buyer, ready, willing and able to purchase said property under the defendants' terms set forth in the letter of October 8, 1941, as amended by telegraphic communications on October 14th and 16th; that the broker disclosed the arrangement in reference to splitting compensation, 3 per cent to be paid by the sellers and 2 per cent by the buyer; that the defendants refused, without cause, to consummate the sale with the buyer; that the commission of 3 per cent was earned by the plaintiff and the payment refused by the defendants.

The Court finds in favor of the plaintiff and assesses the amount of recovery, $2391.66.

Exceptions were taken to the finding of facts as stated by the Court, especially as to conclusions 4, 5, 6, 7, 8, 9 and 10. On March 29, 1943, the motion for new trial was overruled and final judgment was rendered in a separate entry. Notice of appeal was given from the judgment of the Court, wherein on the 29th of March, 1943, the motion for new trial was overruled and the judgment entry against appellant, same being dated April 11, 1943.

A bill of exceptions is before us which is largely devoted to certain letters, telegrams and telephone conversations between the parties. There is no conflict as to the contents of letters or telegrams, although there is a difference in reference to conversations by telephone.

We shall briefly note the evidence disclosed by the bill of exceptions as relates to the documentary evidence and the evidence touching the telephone conversations. There were certain stipulations between counsel which are not of importance. Each counsel stated his conclusions as to what the evidence showed. Plaintiff's counsel asserted that the evidence, among other things, showed that Leslie was a duly authorized broker, and that on the 8th of October he received a letter from defendants outlining the terms under which the farm owned by the defendant, Sarah Shuey McCandless, might be sold, and that the broker was to receive a commission of 3 per cent on $75,000.00; that this offer was accepted and certain extensions were made as time allowed for the sale; that a purchaser ready, willing and able to pay in accordance with the terms of the letter of October 8th, as amended by telegraphic communications held with the defendants who lived in Pittsburgh, on October 14th and 16th; that the acceptance of the offer was made before the expiration of the time for sale and that defendants refused to consummate the sale or to pay the commission.

The defendants, in their trial statement to the Court, made certain admissions, among them being that the husband of the owner of the property wrote the letter to Leslie on October 8th which was in response to some previous correspondence, stating the terms upon which they would accept $75,000.00, the letter finishing by stating that a commission of 3 per cent would be paid to the broker handling the transaction. A few days later there was a telegram in response to a communication from the plaintiff stating that in addition to the real estate they would include their share of the personal property, the livestock, grain and growing crops, and in that

conversation over the telephone it was stipulated that the commission of 3 per cent would be paid. It is asserted by counsel for the defendant that Leslie never accepted the offer contained in that letter, or telegram from the owners to pay 3 per cent, but immediately wrote back demanding 5 per cent and subsequently submitted an offer conditioned upon a 4 per cent commission, and afterwards submitted what purported to be an acceptance, but which did not mention the compensation. It is asserted that no contract was finally made between the parties and none accepted by the defendants; that the offer finally submitted did not comply with the conditions stated in the letter or telegram to Leslie, and it is asserted that there never was any contract between the parties in compliance with the conditions stipulated, and that Leslie never accepted the offer to pay a 3 per cent commission.

We will examine the letters, telegrams and telephone conversations held between the parties.

Plaintiff's exhibit 1 is a telegram dated October 16th, signed by Leslie as broker and addressed to Sarah Shuey McCandless, Pittsburgh. This telegram stated that Stadler has accepted the offer for the purchase of the real estate and all chattels and personal property on the farm "in which you have an interest", under the terms of the letter of October 8th as altered by wires of October 14th and 16th. Leslie states that he has a certified check for $5000.00. Stadler, on October 16th, sent a telegram accepting the offer submitted to Leslie under the terms of the letter of October 8th as amended on October 14th. On October 17th a wire was sent by Leslie stating that Stadler had advised that he expects a deed and also advising them that he, Leslie, is holding a down payment.

The letter of October 8th is introduced as plaintiff's exhibit 5 and is addressed to Mr. Leslie, signed by J. Bard McCandless and Sarah Shuey McCandless. The substance of the letter is that it is to advise that under the following terms "we would accept $75,000.00 for the farm comprising 700 acres belonging to Sarah Shuey McCandless:" (1) That the mortgage on the farm be assumed by the purchaser; (2) The purchaser to take immediate possession, subject to a lease of the present tenant; (3) The personal property to be purchased by the purchaser at prices to be agreed upon by the owner and purchaser provided they can agree upon the value of the same; otherwise the value to be determined by three appraisers; (6) The offer to be accepted by October 13th; (7) The certified check for $5000.00 to accompany offer, which amount is to be

treated as liquidated damage in the event the purchaser does not complete the transaction; (10) "A commission of 3 per cent on $75,000.00 to be paid by the owner to broker handling commission". The statement is made as a postscript to the letter that by the terms "personal property" as mentioned in paragraph 3, "we mean our one-half interest in the cattle, hogs, sheep, hay, grain and this year's corn crop."

Plaintiff's exhibit 6 is a telegram dated Pittsburg, October 14th, to Mr. Leslie, stating in substance, confirming telephone offer of last night, we modify the offer as per letter of October 8th to make the $75,000.00 cover both the real estate and personal property mentioned in paragraph 3, the time of acceptance extended to October 16th "commission to be payable when the final settlement is made otherwise transaction to be made as per letter of October 8th".

Exhibit 7 is the following telegram from J. Bard McCandless to Leslie: "Our share livestock, grain and growing crops on farm to be delivered free of incumbrance and settlement with tenant made as of final closing commission to be 3 per cent on $75,000.00 as per letter of October 8th. J. Bard McCandless". While the telegram does not disclose any punctuation, as we read it there should be a comma after the word "tenant", and probably a period after the word "closing". At any rate, there is a clear statement that "commission to be 3 per cent on $75,000.00 as per letter of October 8th".

On October 15th Leslie wrote a letter to the owners, which is plaintiff's exhibit 8, and which letter is to the effect that "last night I 'phoned you with the request that you clarify details pertaining to the transfer of chattels", etc., "and that you also agree to compensate this office with the regular, customary real estate brokerage of 5 per cent on sales price at the time the sale is completed." He sets out the rules of the Springfield Real Estate Board as to commission to be charged and states, "If our efforts here are successful in developing sale at the price you have outlined or will accept such accomplishment is worth ordinary real estate sale compensation". "May your favorable answer be received immediately in order that the entire transaction shall not be lost to you". On the bottom of this letter in manuscript is the notation with a comment "omit". "The brokerage fee for selling farm in Champaign County, Ohio, in which county this farm is located is 3 per cent. It was the understanding that Mr. Leslie would accept 3 per cent." Signed "J. D. M." There is nothing to indicate whether this notation apparently from Mr. McCandless was ever conveyed to Leslie.

The telegram of October 17th is plaintiff's exhibit 9 and is from the owners in Pittsburgh to Mr. Leslie and states in substance, "Your telegram received. Am not satisfactory. In 'phone conversation with me at my office at 4:30 this afternoon to which you refer you understood that any suggestion of modification as per letter of October 8th and telegram of October 13th would have to be subject to approval of Mrs. McCandless. You also know that when you stated positively that $73,500 was the most your prospective buyer would pay I stated to you that we were therefore released from our offer. **This is to advise that Mrs. McCandless does not approve of any modification of proposition as per said letter of October 8th and telegram of October 13th."** Signed "J. Bard McCandless."

Exhibit No. 10 is a certified copy of a check signed by Stadler for $5000.00.

Exhibit 11 is an offer to purchase the real estate with all appurtenances thereto belonging and including chattels and crops thereon, excepting therefrom livestock and machinery, for the sum of $60,168.00. This offer was made on September 6th and, of course, was never accepted.

Plaintiff's exhibit 12 seems to be an elaboration of the purchase offer of the same date as shown by exhibit 11. It is a carbon copy unsigned and unaccepted. It does state, "at the time of the completion of this sale 2 per cent brokerage is to be paid by me and 3 per cent is to be paid by you on the total purchase price. R. C. Leslie, Springfield, Ohio." This offer never was accepted.

Mr. Leslie sent to the owners a form of telegram which he desired them to sign and send to him, providing among other things, "Brokerage of 5% will be paid to you upon completion of sale to your customer at price of $75,000.00." The telegram was suggested by Leslie but was never sent by defendants.

Defendants' exhibit "B" is a telegram dated October 16, to Mr. McCandless and his wife signed by Leslie, stating in substance, "your proposal to sell the farm designated in letter of October 8th with your interest and all chattels designated by supplemental telegrams for a total sum of $75,000.00 has been accepted by Stadler through the broker as agreed in last 'phone conversation with you, "4% brokerage will be paid by you to writer at completion of sale, which nets you $72,000.00 cash to real estate".

Defendants' "C" is a rough copy of telegram stating in substance, "I accept your offer submitted to me through Leslie under terms your letter to Leslie dated October 8th as amended

by wires of October 14th and 16th, and I agreed to pay $75,000.00 less real estate mortgage which I am to assume and all chattels and personal property on farm on which you have an interest. Have placed certified check for $5000.00 in Leslie's hands. Final communication subject to your tender of marketable title." This letter is dated October 13th, 1941, and appears not to have anything to do with the present contract.

The issue between the parties is simply that Leslie claims to have been employed as the broker for a compensation of 3% of purchase price as mentioned in letter of October 8th and modified later. This is the amount for which Leslie brings action. The owner's claim is that no contract was consummated between the parties finally fixing upon a commission of 3%. Unless the negotiations as finally carried out are referred back to the letter of October 8th it is possibly true that Leslie's several statements as to commission have led to the doubt that there was no final commission contract.

## ASSIGNMENTS OF ERROR

The defendants have filed five assignments of error which may be noted briefly:

1. The Court erred in finding that the plaintiff was employed by the defendant, and that the plaintiff accepted said employment.

2. In finding that within the time prescribed, namely, October 16, 1941, the plaintiff procured a buyer ready, willing and able to make the purchase.

3. In finding that the plaintiff disclosed to the defendant his expectancy of receiving part of his commission from each side.

4. Error in his conclusions of the law set forth in separate findings of fact.

5. Error in that the finding and judgment are against the manifest weight of the evidence.

Counsel has filed a skillfully prepared and persuasive brief in support of these assignments. We shall not endeavor to make a full statement of the several claims of counsel but shall set forth those which seem to us to best present the points maintained.

FIRST ASSIGNMENT OF ERROR:

This is to the effect that the Court erred in finding that the plaintiff was employed and accepted the employment. Counsel points out the fact in the letter of October 8th, Ex-

hibit 5, that the defendants stated that a commission of 3 per cent on $75,000.00 was to be paid by the owner to the broker. Counsel asserts that the most that can be said is that it constituted an offer to pay plaintiff a commission if he should make a sale according to the terms stated in the letter, and counsel claims that there is no evidence that the plaintiff ever accepted employment upon the terms offered, but on the contrary the evidence shows that by telephone conversation on October 14th and by letter of October 15th the plaintiff rejected the offer for a 3 per cent commission and demanded the customary real estate fee of 5 per cent. Counsel asserts that the plaintiff did not enter into a contract with the defendant to perform the services for 3 per cent. He, at that time, as shown by such evidence, was still negotiating for a 5 per cent commission. Plaintiff at that time enclosed the form telegram which he asked the defendants to send to him as "the wire needed to complete your deal". This proposed telegram which was never sent by the defendants stated that a brokerage fee of 5 per cent would be paid on the $75,000.00. Defendants, instead of sending this suggested telegram, sent what is designated Exhibit No. 7, repeating the stipulation for a commission of 3 per cent. This commission was not accepted by the defendants but at 4:30 on the afternoon of October 16th, plaintiff, by long distance telephone, submitted an offer of $75,000.00 from Stadler for the farm, subject to a commission of 4 per cent. On October 17th the defendants sent the plaintiff a telegram stating that the telegram received was not satisfactory, and that any modification of the proposition of the letter of October 8th and the telegram of October 13th would have to be subject to the approval of Mrs. McCandless, and McCandless states in his telegram, "I stated to you that we were therefore released from our offer. This is to advise that Mrs. McCandless does not approve of any modification of the proposition as per letter of October 8th and telegram of October 13th." After the conversation of 4:30, plaintiff at 6:21 sent a telegram, defendants' Exhibit B, to the effect that the offer of sale as made on October 8th and afterwards modified has been accepted by Stadler through Leslie as broker. In this telegram it is stated, "4 per cent brokerage will be paid by you to writer at the completion of the sale, which is to net defendants $72,000.00 cash".

It is asserted by counsel that none of these telegrams is an acceptance of employment by Leslie for the commission of 3 per cent on $75,000.00, and that there was no contract of

employment between plaintiff and defendant so long as there was no agreement as to the amount or percentage of compensation, and it is asserted that there was no agreement or meeting of minds upon the amount of commission, and that the most that might be claimed was that there was a series of offers and counter-offers, the defendants offering to pay 3 per cent and the plaintiff refusing that and offering first to take 5 per cent and then to take 4 per cent. It is asserted by counsel that a conditional offer or a counter offer is a rejection of and terminates the original offer, and that when plaintiff made an offer of his own differing from the offer made by the defendants, he thereby rejected the offer of the defendants, and that it was not afterwards competent for him to revive the proposal of the defendants by tendering an acceptance of it.

This and much more of like purport is urged by defendants. We will for the present pass the first assignment.

SECOND ASSIGNMENT OF ERROR:

This is to the effect that the Court erred in finding that on October 16th the plaintiff had procured a buyer ready, willing and able to make the purchase under the defendants' terms. The position of the defendants on this matter occurs to us as technical rather than meritorious. They assert that the purchase offer obtained by the plaintiff included property which the defendants did not own or offer to sell, and that the plaintiff makes the allegation in his petition that on the 14th of October the defendants amended their employment and included certain personal property in the sale for $75,000.00, said personal property being specifically enumerated. Counsel's objection to the offer made to purchase is that it was of "all chattels and personal property on the farm in which you have an interest", it being asserted that under that agreement defendants who were the owners of one-half interest in the personal property would be obliged to sell and convey to purchaser all of the property in which they had a half interest rather than a half interest in the property. We think the plain interpretation of the contract in reference to the personal property is that the defendants were to convey their one-half interest in the same. This seems to be borne out by their letter, Exhibit 6, modifying the contract of October 8th, so as to include the personal property mentioned in paragraph 3, as further explained by the telegram of October 16th, Exhibit 7, in which it is stated, "**Our share** livestock and growing crops to be delivered free from incumbrance".

We therefore overrule the second assignment of error.

THIRD ASSIGNMENT OF ERROR:

This is that the Court erred in finding that the plaintiff disclosed to defendants his expectancy of receiving part of his commission from each side. We are of opinion that the trial judge had the right to find that the evidence showed that this disclosure was made in time to inform the defendants that there was to be a double payment of commission, 3 per cent by the owners and 2 per cent by the purchaser.

This assignment is overruled.

FOURTH ASSIGNMENT OF ERROR:

This is to the effect that the Court erred in its judgment based upon the finding of facts and points out that the commission was payable when final settlement was made. Counsel asserts that final settlement never was made, and therefore no commission ever was due, but counsel could scarcely maintain that if the defendants prevented a final consummation by a refusal to deliver the property according to terms, that such failure would be a basis for refusal to pay the commission. The owner cannot base a refusal to pay commission on a claim that no final settlement was made, when the owner's act prevents a final settlement. If this were not so, any one could avoid the payment of a broker's commission by simply refusing to carry out the contract.

There are a number of other matters that counsel call to our attention in their assignment of errors which we do not regard as of sufficient importance to especially note.

We overrule assignments 4 and 5.

This brings us back to a final consideration of assignment No. 1, to the effect that the plaintiff never was employed by the defendants, and that there was never any meeting of the minds because there was never any final agreement as to the amount of commission, the plaintiff always endeavoring to secure a higher rate than 3 per cent which was mentioned in the contract of October 8th. We will have to examine more closely just what was agreed to between the parties. If there was no agreement as to commission, the plaintiff cannot recover on the alleged contract. The letter of October 8th, Exhibit 5, states the terms of the contract of the proposed sale and concludes "a commission of 3 per cent on $75,000.00 to be paid by owner to broker handling the transaction". The telegram of October 14th agreed to the modification as to personal property and it stated, "commission to be payable when the final settlement is made; otherwise, transaction to be made as per letter of October 8th. The telegram of October 16th states, "Commission to be 3 per cent on $75,000.00 as per

letter of October 8th". The letter of Leslie on October 15th is an argument why the commission should be increased, but we detect nothing in it that is a clear rejection of the 3 per cent commission offered by the letter of October 8th. In the telegram of October 17th, Exhibit 9, Mr. McCandless wires his conclusion as to the effect of the telephone conversation, and that any suggestions of modification as per letter of October 8th and telegram of the 13th would have to be subject to approval of Mrs. McCandless. This telegram concludes, "This is to advise that Mrs. McCandless does not approve of any modification of proposition as per said letter of October 8th and telegram of October 13th. This seems to us to be a continuation of the old offer or a new offer to pay a commission of 3 per cent for procuring of purchaser. Mr. McCandless states in that telegram that "we were therefore released from our offer". This is an admission on his part that there was some offer by which he was bound, but after the declaration that he was released he proceeded to state that Mrs. McCandless does not approve of any modification of the proposition as per letter of October 8th. And thereupon the plaintiff proceeded to secure a purchaser and demands as his compensation, 3 per cent. This 3 per cent may have had its basis in the original letter of October 8th, or in the telegram of October 14th, Exhibit 6. If the offer as claimed by counsel for defendants, made in the letter of the 8th, was rejected by plaintiff by seeking a new and different compensation, it seems to us that the telegram of October 14th again tendered to him the 3 per cent commission originally named in the letter of October 8th. Was it necessary for Leslie to formally accept this new offer of a commission or has he a right to proceed to carry out the agreement by securing a purchaser, which he did? No matter what the effect was as to the contract for 3 per cent commission by Leslie's endeavor to get a higher commission, we believe Leslie still had the right to rely upon the letter of October 8th and the telegram of October 17th and proceed, and the contract requiring that the matter be closed by October 17th left no time for Leslie to negotiate back and forth as to a restatement of the offer and formal acceptance. The offer stood by virtue of its restatement based upon the letter of October 8th with the definite commission there offered.

We have been much interested in the arguments presented in this case, but find no prejudicial error in the decision of the court below.

Judgment of the Court affirmed.

BARNES, P. J., HORNBECK and GEIGER, JJ., concur.